United States District Court
Eastern District of Pennsylvania

Darren Harcum,
    Plaintiff

v

Marcel Leblanc,
    Defendant

Civil Action

Case No 09-2512

RECEIVED
JUN 24 2010

Plaintiff's Motion To Compel

The above captioned plaintiff hereby motions the court to compel the defendant's Attorney to provide signatures to interrogatories for Marcel Leblanc and Mr. Radle in regards to answers provided by them. Said signatures should indicate that the previously made answers were offered under oath and the penalty of perjury as set forth in the attached brief in support of this motion.

Date: 6-21-10

Darren Harcum

United States District Court
Eastern District of Pennsylvania

Dreeen Harcum,
   Plaintiff

v.

Marcel Leblanc,
   Defendant

Civil Action

Case No 09-2512

Brief In Support of
Plaintiff's Motion to Compel

After the commencement of the discovery period by order of the court the plaintiff forwarded a set of interrogatories to the defendant. The interrogatories were sent in accordance with Federal Rules of Civil Procedure, Rule 33 (See Exhibit A). The plaintiff stated at the end of the interrogatories that the person to whom they were directed should answer them in writing and under oath as Rule 33 states.

The answers to the interrogatories were returned to the plaintiff (See Exhibit B). They were not signed under oath or signed by the defendant at all. They were signed by the defendant's attorney Mr. Venditti.

Secondly, the court granted the plaintiff's motion to allow deposition by written questions to three individuals as part of the plaintiff's discovery process. One of those individuals were Lt. Radle.

The answers to the written questions were returned to the plaintiff. (See Exhibit C). They were not signed under oath by Mr. Radle. They were signed by the defendant's attorney Mr. Venditti.

1

On 6-7-10 the plaintiff wrote to Mr. Venditti explaining that he expected the answers to be signed under oath by the respective parties as court rules stipulate. The plaintiff noticed Mr. Venditti that he would seek a court order requiring him to do such if he did not recieve the signatures in the required manner. (See Exhibit D).

As of the filing date of this motion the plaintiff has yet to recieve the signatures.

Therefore, the plaintiff moves this court to compel the defendant to produce the signatures to Mr. Redles and Mr. Leblanc's respective interrogatories as required by the court's rules. To the plaintiff's knowledge the answers could have been manufactured by Mr. Venditti, as his signatures indicate. The plaintiff would be glad to withdraw this motion if Mr. Venditti accepts full liability for any answers made in them, contradictory or not.

Date: 6-21-10

Darren Harcum

THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARREN HARCUM, | : | CIVIL ACTION |
|     PLAINTIFF | : | CASE NO. 09-02512 |
| | : | |
| v. | : | |
| | : | |
| MARCEL LEBLANC, | : | |
|     DEFENDANT | : | |

## INTERROGATORIES DIRECTED TO
## DEFENDANT LEBLANC

[1]. During your shift on 11-16-08 at 2200 hours at SCI-Graterford in the SNU did you make any tours of the unit?

[2]. If the answer to #1 is yes, how many tours of the unit did you conduct?

[3]. At what time intervals did you conduct tours?

[4]. Was inmate Harcum's cell (#7) visible from the control bubble of tne SNU?

[5]. Did you notice that inmate Harcum's wicket slot was open from the control unit?

[6]. If you did see inmate Harcum's wicket slot open did you take any actions to have it closed? (i.e. attempt to close it yourself or contact a superior officer and notify said officer of such?

[7]. If the answer to #6 is yes, then what action did you take?

[8]. Was it, or would it have been a breach of security for inmate Harcum to open the wicket slot of his own will during your shift?

[9]. Did inmate Harcum at any time request to be seen by medical staff during your shift?

[10]. Did you talk to inmate Harcum or interact with Mr. Harcum on 11-16-08 in the SNU?

[11]. On 11-16-08 did you have in your possession any facility issued keys for the SNU?

[12]. Did the wicket slot in the SNU require facility issued keys for an officer to open and close them?

[13]. If an officer were to open or close a wicket slot in the SNU would you need facility issued keys to do so?

-1-

[14]. On 11-16-08 during your shift did officer Robinson inform you that inmate Harcsum's wicket slot was open?

[15]. At what time was Mr. Harcum's wicket slot open?

[16]. Did inmate Harcum pull a chair up to his cell door?

[17]. At what time did your shift end in the SNU?

[18]. Did you kick inmate Harcum on 11-16-08?

[19]. Did you physically assault inmate HArcum in any way?

[20]. Are the SNU facility issued keys normally kept in the SNU control bubble?

[21]. Other than officer Robinson was anyone else made aware than inmate Harcum's wicket slot was open?

[22]. Have you ever been accused of physically assaulting an inmate in the past?

[23]. Have you provided any written statement to PA DOC officials regarding Mr. Haracum's abuse allegations?

[24]. If the answer to number 23 is yes, exactly what did you write and who did you provide it too?

[25]. Regarding inmate Harcum's allegations of abuse, who did you interview with besides Lt. Radle?

The above stated interrogatories are made pursuant to Rule 33 of the Federal Rules of Civil Procedure. Each interrogatory are to be answered seperately and fully in writing under oath. The answers are to be submitted under oath and signed by the person the interrogatories are directed at. The answers should be returned within 30 days after service.

-2-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARREN HARCUM, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| MARCEL LEBLANC, | : | NO. 09-2512 |
| Defendant. | : | |

## MARCEL LEBLANC'S ANSWERS TO PLAINTIFF'S INTERROGATORIES

[1]. During your shift on 11-16-08 at 2200 hours at SCI-Graterford in the SNU did you make any tours of the unit?
**Yes.**

[2]. If the answer to #1 is yes, how many tours of the unit did you conduct?
**Three probably**

[3]. At what time intervals did you conduct tours?
**Random, no one was assigned specifically**

[4]. Was inmate Harcum's cell (#7) visible from the control bubble of the SNU?
**Yes**

[5]. Did you notice that inmate Harcum's wicket slot was open from the control unit?
**No**

[6]. If you did see inmate Harcum's wicket slot open did you take any actions to have it closed? (i.e. attempt to close it yourself or contact a superior officer and notify said officer of such?
-

[7]. If the answer to #6 is yes, then what action did you take?
-

[8]. Was it, or would it have been a breach of security for inmate Harcum to open the wicket slot of his own will during your shift?
**Yes, It would have been against regulations.**

[9]. Did inmate Harcum at any time request to be seen by medical staff during your shift?

**No.**

[10]. Did you talk to inmate Harcum or interact with Mr. Harcum on 11-16-08 in the SNU?

**No.**

[11]. On 11-16-08 did you have in your possession any facility issued keys for the SNU?

**No.**

[12]. Did the wicket slot in the SNU require facility issued keys for an officer to open and close them?

**Yes.**

[13]. If an officer were to open or close a wicket slot in the SNU would you need facility issued keys to do so?

**Yes.**

[14]. On 11-16-08 during your shift did officer Robinson inform you that inmate Harcsum's wicket slot was open?

**No. I have no recollection of that. I didn't notice anything during rounds.**

[15]. At what time was Mr. Harcum's wicket slot open?

**I don't recall the wicket being open.**

[16]. Did inmate Harcum pull a chair up to his cell door?

**No, I do not.**

[17]. At what time did your shift end in the SNU?

**Around 1:15 am.**

[18]. Did you kick inmate Harcum on 11-16-08?

**No.**

[19]. Did you physically assault inmate HArcum in any way?

**No.**

[20]. Are the SNU facility issued keys normally kept in the SNU control bubble?

**Yes.**

[21]. Other than officer Robinson was anyone else made aware than inmate Harcum's wicket slot was open?
**Objection to the question as improper and leading.**

[22]. Have you ever been accused of physically assaulting an inmate in the past?
**No.**

[23]. Have you provided any written statement to PA DOC officials regarding Mr. Haracum's abuse allegations?
**No, Not that I recall.**

[24]. If the answer to number 23 is yes, exactly what did you write and who did you provide it too?

-

[25]. Regarding inmate Harcum's allegations of abuse, who did you interview with besides Lt. Radle?

**No one.**

                                    THOMAS W. CORBETT, JR.
                                    ATTORNEY GENERAL

                    BY:   /s/ Anthony P. Venditti
                               ANTHONY P. VENDITTI
                               Deputy Attorney General
                               Identification No. 88879

Office of Attorney General
21 South 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Tel:   (215) 560-2940
Fax:  (215) 560-1031

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARREN HARCUM, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| MARCEL LEBLANC, | : | NO. 09-2512 |
| Defendant. | : | |

## RADLE'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

[1]. As a result of the investigation you conducted regarding the allegations of abuse made by inmate Harcum concerning COI Leblanc on 11-16-08 in the SNU at SCI-Graterford, did you personally interview Officer Leblanc?

**Yes**

[2]. If the answer to #1 is yes did Mr. Leblanc inform you that he had any kind of interaction with inmate Harcum that night?

**Interaction but no physical confrontation**

[3]. Did Mr. Leblanc inform you that inmate Harcum had opened his cell door wicket slot?

**Yes, he said it was broken**

[4]. Did Mr. Leblanc inform you of any action he had taken as a result of Mr. Harcum's cell door wicket slot being opened?

**I don't recall**

[5]. If the answer to #4 is yes, please state every action Mr. Leblanc said he had taken in regards to inmate Harcum's wicket slot being opened?

**I don't recall**

[6]. As a result of your investigation interview with officer Patricia Robinson did officer Robinson inform you that inmate Harcum had opened his cell door wicket slot?

**She said it was broken**

[7]. Did officer Robinson inform you of any action she had taken in regards to Mr. Harcum's cell door wicket slot being opened?

**She said nothing out of the normal**

[8]. If the answer to #7 is yes, please list every action that officer Robinson informed you that she had taken.

**None- Nothing happened**

[9]. As a result of your investigation interview did either officer, Leblanc or Robinson, inform you that inmate Harcum had requested medical atteniton during their

**No, not until the next day**

shift? [10]. As a result of the allegations made by inmate Harcum concerning officer Leblanc did you conduct an interview with officer Singleton?

**No**

[11]. If the answer to #10 is yes, did Mr. Singleton inform you that he had interacted with Mr. Harcum in any way?

-

[12]. If the answer to #10 is yes, did Mr. Singleton inform you that when he arrived in the SSNU that Mr. Harcum's wicket slot was open?

-

[13]. If the answer to #10 is no, since Mr. Harcum referenced officer Singleton in his grievance complaint, why did you not interview officer Singleton as part of your investigation?

**I don't know who Singleton is.**

[14]. Did officer Lebalnc inform you that inmate Harcum's wicket slot was closed at some point in time during his shift after Mr. Harcum had intially opened it?

**He said it was broken and then he could not secure it.**

[15]. Did officer Robinson inform you that inmate Harcum's wicket slot was closed at some point in time during her shift after Mr. Harcum had initially opened it?

**See answer number 14.**

[16]. Did officer Singleton inform you that inmate Harcum's wicket slot was closed at some point in time during his shift after inmate Harcum had opened it?

**No because I do not know who he is.**

[17]. Did you personally review the pictures taken of inmate Harcum's left arm?

**Yes.**

[18]. Do you know how Mr. Harcum obtained the injuries to his left arm?

**I would not call them injuries. There was slight discoloration on his skin. I have a theory and that is that he was scratched from fishing and hanging his arms our of the wicket.**

                                        THOMAS W. CORBETT, JR.
                                        ATTORNEY GENERAL

                        BY:   /s/ Anthony P. Venditti
                                ANTHONY P. VENDITTI
                                Deputy Attorney General
                                Identification No. 88879

Office of Attorney General
21 South 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Tel:   (215) 560-2940
Fax:  (215) 560-1031

To: Mr. Venditti
From: Darren Hurcum, DC303(W)
  @ SCI-Albion
Re: Hurcum v. Leblanc
  Case No. 09-cv-2512
Date: 6-7-10

Sir:

I am writing to you in regards to the interrogatories I previously sent to you for defendant Leblanc and those approved of by the Court for Lt. Radle.

The answers to the interrogatories for both individuals were returned to me un-signed by either party. The only signature they contained were a type written signature by you.

I directed, and court rules specifically dictates that all answers are to be signed under oath by the ~~party~~ the party making them. The only thing I saw was your signature, which should only relate to objections.

Therefore I am formally requesting that Mr. Radle and Mr. Leblanc provide a signed statement that the prior interrogatory answers were made by them and are sworn to as true, correct and complete under ~~oath~~ the penalty of perjury

1

I also insist that all future answers to interrogatories and written questions be signed under oath and sworn to under the penalty of perjury by the person making them.

In the event I do not recieve a signed statement from Mr. Leblanc or Mr. Radle as stated above within 10 days of the date you recieved this correspondence I will seek a motion to compel by the court ordering you to provide such.

Thank you for your time and I hope to hear from you in the near future regarding this matter. If you have any concerns please contact me.

Sincerely,

cc: File

-2-

In The United States District Court
For The Eastern District of Pennsylvania

Darren Harcum,
    Plaintiff

v.

Marcel Leblanc,
    Defendant

Civil Action

Case No 09-2512

## Certificate of Mailing

The Plaintiff, Darren Harcum, certifies that on the below listed date that he mailed the following by first class mail, USPS, postage pre-paid:

1. Plaintiff's Motion To Compel
2. Brief in Support of Plaintiff's Motion to Compel

To: Anthony Vendetti
    Deputy Attorney General
    21 South 12th St, 3rd Floor
    Phila, Pa. 19107

Date: 6-21-10

_Darren Harcum_