IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DARREN HARCUM                    :
                                 :    CIVIL ACTION
                                 :
        v.                       :
                                 :
MARCEL LEBLANC                   :    NO.  09-2512

## MEMORANDUM AND ORDER

ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE[1]

        In this action brought pursuant to 42 U.S.C. § 1983, pro se Plaintiff Darren

Harcum ("Plaintiff") seeks damages against Defendant Marcel LeBlanc ("Defendant") for

injuries allegedly sustained in the State Correctional Institution in Graterford,

Pennsylvania ("Graterford"), where Plaintiff resided as an inmate and Defendant worked

as a corrections officer.  Presently before the court is Defendant's motion for summary

judgment (Doc. 60), to which Plaintiff filed a letter response dated December 9, 2010,

stating that he does not oppose the motion.[2]  For the following reasons, I will grant the

motion and enter judgment for Defendant.

_____

        [1]This case was originally assigned to the Honorable William H. Yohn, who
referred the matter to me for all proceedings upon the consent of the parties.  See Docs.
20, 22.

        [2]Rather than contest the motion, Plaintiff stated in his letter that he is "already
aware of what the court's determination will be," accuses the court of having
an underlying current of biasness," and speculates that the court engaged in inappropriate
ex parte communications with defense counsel.  See Doc. 65.  The issues raised in
Plaintiff's letter response will be discussed infra at 5 n.5.

I.    **FACTS AND PROCEDURAL HISTORY**

The facts are taken from the Amended Complaint ("Doc. 18") and Plaintiff's

deposition testimony (attached to Doc. 60 at Exh. "A.").  On November 16, 2008,

Plaintiff was an inmate at Graterford and Defendant was a prison guard on his unit.  See

Doc. 18 at ¶ 1; Pl.'s Dep. at 13-14, 16.  Between 10:15 and 10:30 p.m., Plaintiff asked

Defendant to bring him a plunger because he was having problems with his toilet

overflowing, and Defendant replied "all right."  Pl.'s Dep. at 16-17.  Defendant did not

return until after 11:00 p.m., and he did not bring Plaintiff a plunger as requested.  Id. at

17.  Instead, Defendant told Plaintiff that because Plaintiff had been making noise, he

would not get Plaintiff the plunger.  Id. at 17-18.  When Defendant walked away from

Plaintiff's cell, Plaintiff pushed the "slide" on his cell door open, reached his arms

through the opening and used a bed sheet and a roll of toiler paper to gain control of a

chair located three or four feet outside his cell.  Id. at 18-19.[3]  Defendant returned to

Plaintiff's cell to retrieve the chair and "said something to the effect, so this is how it is

going to play out."  Id. at 20-21.  Defendant put on a pair of gloves and attempted to grab

the chair from Plaintiff, who was holding the chair with both hands.  Id. at 20-23.  After

failing to pull the chair away, Defendant grabbed Plaintiff's left arm and used his prison-

_____

[3]In his motion papers, Defendant describes the "slide" (also known as a wicket or
food slot) is a long narrow opening in the cell door through which items such as food
trays can be passed back and forth, and which are used to cuff inmates behind their back
before removing them from the cell for transporting.  See Doc. 60 at 4 n.1.

issued keys to stab Plaintiff in the left forearm "four or five times." Id. at 23-24.[4] Plaintiff attempted to grab the keys with his right hand, releasing the chair. Id. at 24. Defendant released and then kicked Plaintiff's left arm as it remained sticking out of the slide, and then moved away from Plaintiff's cell. Id. at 25, 27. The chair remained outside Plaintiff's cell door. Id. at 25.

Plaintiff described Defendant's kick as "a straightforward kick," like one would punt a football, and not like a karate kick or a backwards kick. Pl.'s Dep. at 26. He testified that the kick landed on the underside of his left arm, and that it hit "square on." Id. at 31, 32. His injuries consisted of "a couple of bruises" and "a few cuts and abrasions," but he was uncertain whether the kick caused any injury to his arm or whether it left a mark, explaining that he could not tell whether the bruises were caused by being stabbed with the keys or getting kicked. Id. at 31-33. He stated that "obviously getting stabbed with the keys was more painful than the kick." Id. at 32.

Plaintiff went to the medical office during the next guard shift, where the prison nurse swabbed his forearm with ointment. Pl.'s Dep. at 36-37. Plaintiff refused "pain pills" because he already took pain medication for migraine headaches, and he refused a bandage for the abrasions on his forearm because the wounds were "mostly superficial." Id. at 36, 38. He received no medical treatment for the underside of his arm. Id. at 37.

---

[4]As will be explained, I previously granted Defendant's motion to dismiss with respect to the use of the keys.

Plaintiff commenced this lawsuit against Defendant alleging violations of the Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. On November 30, 2009, Plaintiff filed a Motion for Leave to File an Amended Complaint, which Judge Yohn granted on December 2, 2009. See Docs. 16, 17. On December 28, 2009, Plaintiff filed an amended complaint alleging Eighth Amendment violations for excessive force as to Defendant's use of keys and his alleged kick, as well as for delay of medical treatment. See Doc. 18. On May 6, 2010, upon consideration of Defendant's motion to dismiss (Doc. 19), I dismissed Plaintiff's claims of excessive force related to the use of keys and delay of medical care. See Doc. 35.

On September 24, 2010, Defendant filed the present motion for summary judgment seeking judgment in his favor as a matter of law on the sole remaining claim, namely excessive force as to Defendant's kick. Plaintiff never filed a response to the motion. On October 21, 2010, I filed a memorandum and order granting Defendant's summary judgment motion, and entered judgment in favor of Defendant and against Plaintiff. See Docs. 61, 62. Plaintiff subsequently provided the court with notice of temporary changes in his prison housing, arguing that those changes prevented him from responding to Defendant's motion. See Doc. 63. As a result, on November 2, 2010, I vacated my order granting Defendant's motion for summary judgment, placed the matter in suspense pending Plaintiff's return to the general prison population, and gave him fourteen days from the time of his return to the general prison population in which to respond to

Defendant's motion.  See Doc. 64.  By letter docketed on December 9, 2010, Plaintiff

notified the court that he had returned to the general prison population, but that he will

not oppose Defendant's motion.  See Doc. 65.[5]

Although pro se Plaintiff does not oppose Defendant's summary judgment motion,

I will nevertheless address the motion on the merits.

## II.    STANDARD OF REVIEW

Summary judgment may be granted only "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue of material fact and that the moving party is entitled to judgment as a

---

[5]As previously noted, Plaintiff stated in the letter that the court engaged in "a
handful of telephone conversation[s] with the defendant's attorney . . . that the plaintiff
was neither notified of or given an opportunity to participate in," suggesting that these
conversations evidence bias on the part of the court.  See Doc. 65.  Plaintiff is correct that
ex parte communications occurred, but each involved a short, non-substantive contact
between my clerk and defense counsel.  Specifically, on April 23, 2010, my clerk
confirmed that defense counsel did not oppose Plaintiff's motion to depose corrections
officers with written interrogatories; on May 4, 2010, my clerk instructed defense counsel
to promptly file his consent to my jurisdiction, as Plaintiff had already done; on August 9,
2010, my clerk notified defense counsel that Plaintiff's unopposed request for extension
of time for discovery would be granted by order to be filed the following week, and
instructed him to promptly notify Plaintiff (as the two were planning to speak prior to the
time the order would be docketed); and in October 2010, my clerk asked defense counsel
whether he had received any response to Defendant's motion for summary judgment (as
none had been docketed or received by chambers).  Because my clerk's contacts with
defense counsel were not related to the merits and were made solely in the interest of
judicial efficiency, Plaintiff's suggestion of bias is rejected.  I also reject Plaintiff's
suggestion of bias based on my prior dismissal of his claim of excessive force in
connection with the guard's use of keys.  See id.

matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

The moving party has the initial burden of demonstrating that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). After the moving party has met its initial burden, the adverse party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Techs., Inc., 78 F.Supp.2d 402, 408 (E.D. Pa. 2000). The evidence presented must be viewed in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255; Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983).

## III.   DISCUSSION

Plaintiff alleges that Defendant kicked his forearm as it stuck out of the slide in his cell door, and that the kick amounted to a violation of his Eighth Amendment rights. Defendant argues that no genuine issue of material fact exists with regard to Plaintiff's claim, and that Defendant is therefore entitled to judgment as a matter of law.

It is well settled that "every malevolent touch by a prison guard does not give rise to a federal cause of action." Hudson v. McMillan, 503 U.S. 1, 9 (1992). Rather, the

relevant inquiry in evaluating a claim of excessive force by prison guards is whether the force used was applied in good faith to maintain or restore discipline, or instead maliciously and sadistically to cause harm.  See id. at 6-7; Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  The Supreme Court has identified several factors which must be considered in evaluating the use of force, including the extent of any injury sustained by the prisoner, as well as "the need for the application of force used, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Whitley, 475 U.S. at 321.

As a result, analysis of Eighth Amendment claims involves both an objective and subjective component.  See Wilson v. Seiter, 501 U.S. 294, 298-300 (1991).  The objective component – whether the force was objectively serious enough – generally turns on the extent of any injury sustained.  Although a prisoner need not show significant injury to state an excessive use of force claim, see Hudson, 503 U.S. at 8, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  Id. at 9-10 (citations omitted); see also Northington v. Jackson, 973 F.2d 1518, 1523 (10th Cir. 1992) (presence or absence of injury is a factor in determining whether defendant's conduct constituted objectively serious use of force).

As to the subjective component, the Court considers whether the defendant acted "maliciously and sadistically," that is, whether the defendant intended harm. See Hudson, 503 U.S. at 9; Whitley, 475 U.S. at 320-21. The subjective element can only be proved by showing that the defendant acted with a sufficiently culpable state of mind. See Farmer v. Brennan, 511 U.S. 825, 837 (1994); Hudson, 503 U.S. at 8. As a result, "[s]ummary judgment in favor of a defendant is not appropriate 'if it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain.'" Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley, 475 U.S. at 322).

Here, both the objective and subjective factors set forth by the Supreme Court weigh heavily in favor of Defendant. First, the force was not serious enough from an objective standpoint to prove a constitutional violation. According to Plaintiff's own version of events, Defendant kicked him under his left forearm at the conclusion of an incident that began when Plaintiff reached through the opening of his cell door and used a bed sheet and a roll of toiler paper to gain control of a chair. See Pl.'s Dep at 18. Defendant put on a pair of gloves and attempted to grab the chair from Plaintiff, who did not release the chair until Defendant resorted to the use of his prison-issued keys to stab Plaintiff in the left forearm. Id. at 20-24. Defendant released Plaintiff's left arm and, while Plaintiff's arm remained sticking out of his cell door wicket, Defendant kicked it

once before moving away.  Id. at 25, 27.[6]  Plaintiff described the kick as

"straightforward," like one would punt a football, and not like a karate kick or a

backwards kick.  Id. at 26.  He described his injuries as "a couple of bruises" and "a few

cuts and abrasions," but he was uncertain whether the kick caused any injury to his arm or

whether it left a mark, explaining that he could not tell whether the bruises were caused

by being stabbed with the keys or getting kicked.  Id. at 31-33.  He stated that "obviously

getting stabbed with the keys was more painful than the kick."  Id. at 32.  Finally, Plaintiff

refused a bandage for his wounds because they were "mostly superficial," and he received

no medical treatment whatsoever for bruises on the underside of his arm.  Id. at 36-38.[7]

---

[6]Defendant avers that at the time of the kick, Plaintiff was "still gasping the chair." Doc. 60 at 8.  However, Plaintiff testified in his deposition that he released the chair when Defendant grabbed his arm and jabbed it with the keys, before the kick, and that he grabbed the chair again after Defendant left the vicinity of his cell.  See Pl.'s Dep at 24-25, 29.  I do not find this discrepancy to be material.

[7]Plaintiff attached a number of exhibits to his amended complaint, including a barely legible handwritten statement dated November 17, 2008, in which he described the incident and his injuries as part of the prison's formal grievance procedure.  See Doc. 18 at ¶¶ 33-34; Statement attached to Doc. 18 at Exh. "A" ("Statement").  In the Statement, Plaintiff referenced photographs of his injuries taken earlier in the day in the prison medical facility.  See Statement at 3.  Although Defendant does not refer to a subsequent investigative report in support of his summary judgment motion, the report was attached as Exhibit "A" to his prior motion to dismiss.  See Doc. 19-2.  With regard to the photographs, the report states:  "The photographs taken the day after the alleged assault show no injuries that would be consistent with being stabbed with a set of institutional keys.  There are small slight abrasions that are barely visible; these abrasions are more consistent with an inmate who is sticking his arm out of an open wicket."  See Doc. 19-2 at 3.

Under the circumstances, I conclude that Defendant's single kick to the underside of Plaintiff's left forearm did not constitute an objectively serious use of physical force, and that any injury sustained as a result of the kick was de minimis at worst. This conclusion is consistent with numerous analogous excessive force cases arising in the prison context. See, e.g., Reyes v. Chinnici, 54 Fed. Appx. 44, 47 (3d Cir. 2002) (officer's punch of inmate not excessive use of force); Jackson v. Pitcher, C.A. No. 92-1056, 1992 WL 133041, *1 (6th Cir. June 16, 1992) (guard's stomp on inmate's hand is de minimis force); Caldwell v. Luzerne Co. Corr. Facility Mgmt. Employees, — F.Supp.2d —, 2010 WL 3191855, *8 (M.D. Pa. Aug. 11, 2010) (Rambo, J.) (single punch to back of inmate's head does not violate Eighth Amendment); Cyrus v. Hogstein, C.A. No. 06-2022, 2007 WL 136747, *10 (M.D. Pa. Jan. 16, 2007) (McClure, J.) (single slap to inmate's head does not violate Eighth Amendment); Barber v. Grow, 929 F.Supp. 820, 823 (E.D. Pa. 1996) (intentionally pulling chair out from underneath inmate, causing cuts and bruises, is de minimis force); Brown v. Vaughn, C.A. No. 91-2911, 1992 WL 75008, *1-2 (E.D. Pa. March 31, 1992) (Buckwalter, J.) (no Eighth Amendment violation where corrections officer initiated violence by punching inmate once in chest and verbally abused him); Lenegan v. Althouse, C.A. Nos. 87-6820, 1988 WL 55243, *1 (E.D. Pa. May 26, 1988) (Broderick, J.) (pulling inmate's hair and ears and smacking back of inmate's head caused de minimis injury).

Furthermore, the record does not support a subjective finding that Defendant acted maliciously or sadistically when he kicked the underside of Plaintiff's left forearm. As Plaintiff's version of events demonstrates, the single kick occurred in the context of a brief altercation in which Defendant attempted to force Plaintiff to release a chair that he had grabbed by extending his arms out of his cell door. Although Plaintiff had released the chair immediately prior to the kick, both the chair and Plaintiff's arms remained outside the cell door. See Pl.'s Dep. at 25. In addition, Defendant kicked Plaintiff's arm once and in a "straightforward" manner, id. at 26, rather than multiple times or by use of a martial arts-style kick, either of which would suggest intent to injure. Moreover, the fact that Plaintiff's arm was in a vulnerable position, and yet he cannot say with certainty whether the kick caused any injury, suggests that Defendant did not act with malicious intent to injure. Nor did Defendant yell at Plaintiff or say anything indicating an intent to injure or malicious intent. In short, Plaintiff's own version of events does not support a reliable inference that the kick constituted a wanton infliction of pain. See Brooks, 204 F.3d at 106.

For all of the aforementioned reasons, I conclude that each of the factors set forth by Whitley, 475 U.S. at 321, favors Defendant, and that no genuine issue of material fact exists regarding the sole claim remaining in the case. Therefore, I will grant Defendant's summary judgment motion and enter judgment for Defendant.

**IV.** **CONCLUSION**

Viewing the evidence in the light most favorable to the non-moving party, <u>see</u>

<u>Anderson</u>, 477 U.S. at 255, I conclude that Defendant has met his burden of showing that

no genuine issue of material fact exists with regard to Plaintiff's sole remaining claim of

excessive force. <u>See</u> Fed. R. Civ. P. 56(c). Plaintiff has not filed any opposition to the

motion and so has not attempted to set forth specific facts showing that there is a genuine

issue for trial. <u>See</u> Fed. R. Civ. P. 56(e). Because I do not find any genuine issues for

trial on the existing record, I will grant judgment for Defendant as a matter of law. An

appropriate Order follows.